THE HOPE MUTUAL FIRE INSURANCE COMPANY, Respondent, *v.* HENRY BECKMANN, Appellant.

1. *Insurance companies—New charter treated as amendment to old one, prior to change of constitution, when.*—The Hope Mutual Insurance Company was incorporated in 1857. In 1864 a new charter was obtained, which did not purport in terms to be an amendment to the old one, but had precisely the same title and embodied most of its provisions, with the addition of certain new ones. *Held,* that, under the present State constitution, it could not be treated as an amendment, both from defect of title and from want of proper specifications in regard to the act repealed. But under the constitution in force at the passage of the new charter, if, from the general scope of the act, it was evidently intended as such amendment or supplement, courts must so treat it.

2. *Insurance companies, mutual, suit on premium note by — Amendment of charter, acceptance of by company.*—In general, the directors of a moneyed corporation, when the Legislature has parted with control over the charter, have no power to procure or validate by consent such changes in the charter as require the assent of the corporation. But in a suit by a mutual insurance company, after a change in its charter, against one of its former stockholders, on a premium note given prior to the change, no burden is thrown upon the company, as a part of its case, to show a due acceptance of the amendment by the corporation itself. The assent to the new charter by the corporation will be inferred from any acts or omissions inconsistent with any other hypothesis.

3. *Insurance—Certificate of assessment filed before justice as statement of cause of action, effect of.*— In a suit by an insurance company against a stockholder on his premium note, commenced before a justice of the peace, the filing by plaintiff of the certificate of assessment upon defendant's policy instead of his premium note, was not a fatal irregularity, but one which might be corrected whenever objection was raised to it, and would not vitiate a judgment if the trial were suffered to progress without raising it.

*Appeal from Sixth District Court.*

*T. Bruere,* for appellant.

I. The act of 1864 is a new charter, and no amendment to the act of 1857. Corporations are the creatures of the law; and,

without any express declaration in the charter of 1864 that the same shall be an amendment to the act of 1857, no court has a right to presume so from the mere fact that the name of the corporation is the same.

II. The act of 1864 is not binding upon appellant, even if considered as an amendment, unless his express consent is proven, because it materially changes his rights and liabilities. Any essential change in the original plan and purpose of the association releases appellant. (Troy & Rutland R.R. Co. v. Kerr, 17 Barb. 581 ; New Orleans R.R. Co. v. Harris, 27 Miss. 517; State v. Bailey, 16 Ind. 46.)

III. The note was the foundation of suit, and should have been filed. (Gen. Stat. 1865, ch. 13, p. 701, §§ 9, 12.)

*Lewis & Beckington*, for respondent.

. The second act of incorporation, approved January 26, 1864 (Sess. Acts 1864, p. 347), did not destroy the old corporation nor create a new one. It did not repeal the existing charter, nor does it contain any expression indicating a purpose to extintinguish the existing corporation. It only repeals such acts and parts of acts as may be in conflict with the new law. The existence and continuance of the corporation are expressly recognized by the terms of the enactment ; and if this be not a purely amendatory act, it is nothing more than a second or supplemental charter granted to an existing corporation. The company was thenceforth empowered to act under both charters, except in so far as they might conflict with each other, in which case the latter enactment would control. (Sess. Acts 1857, p. 564 ; Sess. Acts 1864, p. 348 ; Abb. Dig. & Corp. 175, §§ 254, 256, 258, 260–1 ; Norris v. Mayor, etc., 1 Swan, Tenn., 164 ; Johnson v. Crawley, 25 Ga. 316 ; Sumrall v. Sun. Mut. Ins. Co., 40 Mo. 27.) If, however, it be insisted that the act of 1864 created a wholly new corporation, then there are simply two companies in existence having the same name. The repealing clause in the late charter does not affect anything contained in the former, for that is the charter of a different company, and there can not be any conflict between acts which operate independently of each

other and upon totally different objects. The old company is, therefore, still alive under its first charter, and the defendant has no ground upon which to affirm that it is not that company with which he contracted which now sues him. He does not show any violation of the contract made with the original corporation either before or since the act of 1864.

BLISS, Judge, delivered the opinion of the court.

In 1857 the plaintiff was incorporated (Sess. Acts 1856–7, p. 564), and by the terms of the charter all who took out policies were to become members. Defendant was insured in 1859 and gave his premium note, upon which suit is now brought. But in the meantime, to-wit, in January, 1864 (Sess. Acts 1863–4, p. 347), a new charter is obtained, which does not purport in terms to be an amendment of the old one, but has precisely the same title and embodies most of its provisions, with the addition of certain new ones. It provides (§ 1) that "the present directors [naming them] of the Hope Mutual Fire Insurance Company of St. Louis, and all other persons who may hereafter become members of said company in the manner herein prescribed, be and the same are hereby incorporated," etc. The first charter provides for sixteen directors, and the last for twelve. By the first charter there is but one department; while by the last, separate departments are created for the city and country, and there are some other not very important changes.

The defendant claims that the second charter creates an entirely independent company, which is the present plaintiff; that he gave that company no premium note and is not holden to it; while, on the other hand, counsel for plaintiff contend that the second charter is but an amendment or supplement to the first. Under our present constitution it could not be treated as an amendment, both from defect of title and from want of proper specifications in regard to the act repealed. But under the constitution then in force, if, from the general scope of the act, we find that it was intended as such amendment or supplement, we must so treat it.

It can not be an amendment, says the defendant, or at least such a one as leaves the old corporators in the company, because

they are not included in the description of members; and a grammatical construction of the provision above quoted might favor this view and exclude all except the directors and those hereafter to become members. But the phraseology admitting this construction is evidently a blunder of the draughtsman. He must have supposed that the directors, as the trustees of eleemosynary corporations, composed the company, and, by including them, that he embraced all its then members; and the whole provision can not be reconciled with any other view. The phraseology relied upon, by the plainest implication, contradicts the claim that a new corporation was created; for we find that not only are the directors of the existing company to be continued members under the new charter, but all persons who may "hereafter become members *of said company* in the manner herein prescribed," etc., referring only to the company already existing. *According* to the claim, an entirely new charter, creating a new corporation, not only adopts as corporators the present representative men of another corporation, but provides that its new members shall consist alone of persons who shall hereafter become corporators, not in itself, but in the other corporation — making, in a word, no provision for any other corporators than those belonging to another company. The claim involves an absurdity. The naming of the directors, instead of the members, was a blunder, and the legislative intention was to continue the old company with such changes as were considered desirable.

But defendant also contends that, inasmuch as this company was expressly exempted from the operation of the general law of corporations then in force, reserving to the Legislature the power of amendment and repeal (R. C. 1855, p. 371, § 7), the new act should have been accepted by the company instead of the directors; and, not having been so accepted, the company acting under it has no legal existence. It is true that the directors of a moneyed corporation, when the Legislature has parted with control over the charter, have in general no power to procure or validate by consent such changes in the charter as require the assent of the corporation. They are the mere agents of the corporators; are imperatively bound and limited by the charter and

by-laws adopted in conformity with it; are the servants, not the masters, of the corporation. (Commonwealth v. Cullem, 13 Penn. St. 133.) But the record fails to show by whom this amendment was accepted, or whether it was accepted at all, and it only appears that the corporation is organized and acting under it. The objection assumes that it was the duty of the plaintiff, as part of its case, to show the due acceptance of this amendment, and perhaps of the original charter itself. No such burden in bringing ordinary actions is thrown upon corporations. It is true an issue might be made that would involve the question, but in the prosecution of its ordinary business the assent to the new charter will be inferred from any acts or omissions inconsistent with any other hypothesis. (Commonwealth v. Cullem, *supra*; Bank v. Dunbridge, 12 Wheat. 71.) The Supreme Court of Ohio, in Owen v. Pendry, 12 Ohio St. 79, thus speaks of the rights of a stockholder who complains of an amendment to a charter, even when he is made to suffer by its provisions: "The law protects any stockholder who, his assent being requisite to the amendment of a charter, has not assented. If a personal charge is sought to be fixed upon him by virtue of such amended charter, he may deny that he assented; he is not concluded by any presumption arising from the acts of the other corporators or corporate body. If his interest in the corporation or rights as a stockholder will be affected by acting under the amended charter before it is accepted in the prescribed mode, he may invoke the aid of the State in a *quo warranto*, or, in an action by himself, the power of a court to restrain. But it can not be permitted that a corporator, though his assent be in the first instance required, shall stand by consenting to the progress of a corporation under a charter, and then, when his interest shall so require, set up either as a claim or defense that, for want of his direct assent, the grant of a charter was not effective, and the acts done were illegal."

In the case at bar, the liability of defendant does not arise by virtue of the amendment, nor does it appear that it is in any way affected by it. He can not in this collateral way dispute its adoption; but if, as a stockholder, he objects to it, he should put its

7—VOL. XLVII.

legality in issue by a direct proceeding. It is very different from those cases where the amendment to the charter is such as to substantially change the character or objects of the corporation. In most of the States such amendment, without his personal assent, even though formally adopted, is held to discharge a subscriber to the capital stock from any liability upon his subscription, for the .reason that his contract is thereby changed and can not be enforced. But in Missouri, in Pennsylvania R.R. v. Hughes, 22 Mo. 291, even that doctrine is denied by a majority of the court, and the cases are ably reviewed upon both sides. In the case at bar there is no change in the character or object of the corporation; there is no change in the contract. The defendant has had all the benefit he contracted for; his period has expired, and he is now called upon to pay for the losses of others, according to the terms of his agreement. Had he been a sufferer by fire he would hardly have thought it fair for his co-insured, composing with him the company, to make the defense of which he now seeks to avail himself.

The suit was commenced before a justice of the peace, and, as a statement of the cause of action, the plaintiff filed an official certificate of an assessment upon defendant's policy, and after the case had been appealed to the Circuit Court, and all the evidence was offered, defendant asked for an instruction that plaintiff could not recover because this was not the instrument upon which suit was brought, and the premium note should have been filed with the justice. The note embraces the contract upon which the action is founded, but the fact that the plaintiff failed to file it was not fatal to the suit. It was an irregularity which could have been corrected by filing the proper paper when the objection was raised, and does not vitiate the judgment if the trial is suffered to proceed without raising it. (Sublett v. Nolan, 5 Mo. 516; Boatman v. Curry, 25 Mo. 433.)

We find no error in the proceedings of the Circuit Court, and the judgment of affirmance in the District Court is affirmed. The other judges concur.